Opinion issued August 31, 2006








     






In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00806-CV




TOMAS DELEON AS ADMINISTRATOR OF THE ESTATE OF MARCO
ANTONIO DELEON MOLINA, DECEASED, JOSE DELEON LOPEZ,
AND AGUSTINA MOLINA CORONADO, Appellants

V.

DSD DEVELOPMENT, INC., DW&S CONSTRUCTION COMPANY, INC.,
DONALD WESLEY SOWELL CONSTRUCTION, INC. INDIVIDUALLY
AND D/B/A DW&S CONSTRUCTION, DW&S CONSTRUCTION, INC.
MICHAEL J. SOWELL, DONALD WESLEY SOWELL, BEATRICE
SOWELL, AND THREE PROPERTIES, LTD., Appellees




On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 321,751-401




MEMORANDUM OPINION
          Marco Antonio Deleon Molina (“Molina”) was accidently killed while working
at a construction site. Molina was an employee of a subcontractor at the site,
Hernandez Concrete, Inc. Molina’s estate and his parents (“appellants”) filed a
wrongful death and survival action against numerous defendants with connections to
the construction project. Appellants now appeal summary judgments rendered by the
trial court in favor of the site’s general contractor, Donald Wesley Sowell
Construction, Inc. d/b/a DW&S Construction Inc. (“DW&S”); the premises owner,
Three Properties, Ltd.; and other affiliated entities and individuals. 
          The arguments raised by appellants on appeal can be reduced to the following
dispositive issues: (1) whether appellants offered more than a scintilla of evidence to
show that DW&S, as a general contractor, owed a duty of care to Molina, (2) whether
Texas Civil Practice and Remedies Code section 95.003


 is preempted by federal law,
(3) whether a no-evidence summary judgment was properly granted pursuant to
section 95.003 in favor of Three Properties, and (4) whether the summary judgments
granted in favor of several other appellees were appropriately granted. 
          We affirm.
Factual and Procedural Background
          Three Properties owned a 565-unit apartment complex in Houston. It hired 
DW&S, as the general contractor, for a “rehab” construction project at the complex. 
In turn, DW&S subcontracted with Hernandez Concrete to do concrete repair at the
site. Molina was an employee of Hernandez Concrete. While working at the
construction site, Molina’s head was crushed by the front loader that he was
operating. Molina died from his injuries the following day.
          Alleging negligence, Molina’s estate and his parents—who are the appellants
in this case—sued Francisco Hernandez, individually and d/b/a The Hernandez
Concrete Company,


 DW&S, Three Properties, DSD Development, Inc. (“DSD”), and
other affiliated corporate entities.


 As part of their claims, appellants asserted that
DW&S and Three Properties “conducted their work at the project in a negligent
manner because they violated the duties which they owed [Molina] to exercise the
proper level of care in their performance of the work which constituted the project
and to provide [Molina] a safe workplace.” Appellants alleged that Three
Properties’s and DW&S’s “violations of OSHA


 rules and regulations” constituted
negligence per se. To support its claim for exemplary damages, appellants asserted
a claim of gross negligence. Appellants also claimed that the corporate defendants
were liable for the actions of one another based on the theory of joint enterprise. 
          Additionally, appellants sued Donald Sowell and his wife Beatrice Sowell. The
Sowells own all shares of DSD, the general partner of Three Properties, and of
Platinum S, L.L.C, its limited partner. Appellants also sued Michael Sowell, who
with his father Donald, owns DW&S. Appellants alleged that the three Sowells were
individually liable based on theories of fraud and alter ego. 
          DW&S filed a motion for summary judgment asserting that it could not be held
liable for Molina’s death because, inter alia, it had no right to control Hernandez
Concrete’s work. Appellants responded by offering the contract between DW&S and
Three Properties to show that DW&S had the contractual right to control Hernandez
Concrete’s work. 
          DSD and Michael Sowell also sought summary judgment, pointing out that, as
pled by appellants, their liability was dependent on the other corporate defendants’
liability. DSD and Michael asserted that, because the corporate defendants were
entitled to summary judgment, they likewise were entitled to summary judgment. 
Additionally, the motion for summary judgment contained a no-evidence challenge
to appellants’ fraud claim. 
          Three Properties filed a no-evidence summary judgment, asserting that, as the
property owner, it was not liable as a matter of law pursuant to section 95.003. In
their response to Three Properties’s motion for summary judgment, appellants
contended that section 95.003 is preempted by federal law, “including OSHA
requirements,” in this case. In support of this contention, appellants offered a loan
agreement between Three Properties and the City of Houston showing that Three
Properties had obtained a loan from the city to purchase the apartment complex where
Molina was injured. The loan agreement provided that funding was through a federal
community development grant program and required Three Properties to abide by
federal law. Appellants contended that federal law required Three Properties to retain
control of the construction work at the site and to insure the workers’ safety.
          The trial court granted the motions for summary judgment of Three Properties,
DSD, Michael Sowell, DW&S, and its affiliated entities. Following the granting of
these motions, Donald and Beatrice Sowell filed a motion for summary judgment. 
The Sowells asserted that no evidence existed as to appellants’ fraud and alter ego
claims on which appellants sought to hold them individually liable. Alternatively, the
Sowells argued that the alter ego claim was “moot” because the corporate defendants
had been previously dismissed or non-suited. The trial court also granted the
Sowells’ motion for summary judgment. The trial court later signed a judgment
making all orders for summary judgment final.
          Appellants seek reversal of the summary judgments.
DW&S’s Motion for Summary Judgment
          In their first issue, appellants contend that the trial court erred in granting
DW&S’s motion for summary judgment on the ground that DW&S had no right of
control over Hernandez Concrete’s work. Before we delve into the issue of DW&S’s
control, however, we first must determine what type of motion for summary judgment
DW&S filed with respect to this issue. 
A.      Type of Motion for Summary Judgment
          DW&S did not express in its motion for summary judgment whether it was
seeking a traditional summary judgment or a no-evidence summary judgment.


 On
appeal, DW&S contends that it filed a traditional motion for summary judgment. In
contrast, appellants contend that DW&S filed a no-evidence motion for summary
judgment. Determining the type of motion filed is critical because the two forms of
summary judgment are distinct, entail different burdens, and invoke different
standards of review. Compare Tex. R. Civ. P. 166a(c), with Tex. R. Civ. P. 166a(i). 
          A party moving for a traditional motion for summary judgment under rule
166a(c) has the burden to show that there is no genuine issue of material fact and that
it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A traditional
movant also has the burden to prove all essential elements of its cause of action or
defense as a matter of law. Id. By contrast, when a party moves for a no-evidence
motion for summary judgment under rule 166a(i), the party must assert that there is
no evidence of one or more essential elements of a claim or defense on which the
nonmovant bears the burden of proof at trial. See Tex. R. Civ. P. 166a(i). The
movant must specifically identify the elements as to which it claims there is no
evidence. See id. The burden then shifts to the non-movant to produce evidence
raising a genuine issue of material fact on the challenged element(s). See id. 
          Here, DW&S’s motion for summary judgment does not delineate whether it is
a no-evidence or a traditional motion for summary judgment. The motion is
unrevealing on its face, citing neither to rule of civil procedure 166a(c) nor to rule
166a(i). An initial reading of the motion reveals an amalgam of traditional and no-evidence language and argument. 
 
          The motion for summary judgment acknowledged that appellants claimed in
their petition that DW&S had a right to control the work of Hernandez Concrete. In
this regard, the motion stated, “[T]here is no evidence to support the allegation that
DW&S had the right to control Hernandez [sic] work.” The remainder of the motion
read as though DW&S intended the motion to present only a traditional summary
judgment argument. Though it is peppered with the phrase “no evidence,” a deeper
reading of the motion, in conjunction with rule 166a, reveals that DW&S also
assumed the burden of proving, as a matter of law, that it owed no duty to Molina
because it neither contractually nor actually controlled the subcontractor’s work at the
construction site. Thus, out of an abundance of caution, we will interpret the motion
as presenting both no-evidence and traditional summary judgment arguments.
          When a party moves for summary judgment under both rules 166a(c) and
166a(i), we first review the trial court’s judgment under the no-evidence standard of
rule 166a(i). Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). Under
that standard, appellants were required to produce summary judgment evidence
raising a genuine issue of material fact to defeat the summary judgment. See Tex. R.
Civ. P. 166a(i). A no-evidence summary judgment is improper if the respondent
brings forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. Id; Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172
(Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak as
to do no more than create a mere surmise or suspicion of a fact. Forbes, 124 S.W.3d
at 172. More than a scintilla of evidence exists if it would allow reasonable and
fair-minded people to differ in their conclusions. Id. If appellants produced more
than a scintilla of evidence that DW&S had a right of control, only then do we
analyze whether DW&S’s proof satisfied its Rule 166a(c) burden. See Ridgway, 135
S.W.3d at 600. 
B.      DW&S’s No-Evidence Motion for Summary Judgment
          1.       General Principles Governing Duty
          To successfully prosecute a negligence cause of action, a plaintiff must show
(1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty, and
(3) damages proximately caused by the breach. Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001). In most circumstances, a general contractor does
not owe a duty to ensure that an independent contractor performs its work in a safe
manner. Id. at 783; Elliott-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). A
duty may arise, however, when a general contractor retains some control over the
manner in which the subcontractor’s work is performed. Lee Lewis Const., 70
S.W.3d at 783; Elliott-Williams, 9 S.W.3d at 803. This principle is explained in
section 414 of the Restatement (Second) of Torts, which the Supreme Court of Texas
adopted in Redinger v. Living, Inc., 689 S.W.2d 415, 418 (Tex. 1985). Section 414
provides as follows:
One who entrusts work to an independent contractor, but who retains the
control of any part of the work, is subject to liability for physical harm
to others for whose safety the employer owes a duty to exercise
reasonable care, which is caused by his failure to exercise his control
with reasonable care.

Restatement (Second) of Torts § 414 (1965). 
 
          In Lee Lewis Construction, the supreme court recognized that “[u]nder our
decision in Redinger, a general contractor may owe a duty of reasonable care to a
subcontractor’s employee, and consequently may be liable for injury to that
employee, if the general contractor retains control over part of the work to be
performed . . . .” Lee Lewis Const., 70 S.W.3d at 783 (citing Redinger, 689 S.W.2d
at 418). A party can prove a right to control by evidence of a contractual agreement
that explicitly assigns the general contractor a right to control. See Dow Chem. Co.
v. Bright, 89 S.W.3d 602, 606 (Tex. 2002). That is, a contract may impose control
on a general contractor thereby creating a duty of care. Elliott-Williams, 9 S.W.3d at
804. 
          A general contractor’s duty of care is commensurate with the control it
possesses over the contractor’s work. Lee Lewis Const., 70 S.W.3d at 783;
Elliott-Williams, 9 S.W.3d at 803. More particularly, a general contractor may be
liable for its independent contractor’s acts if it has the right to control the means,
methods, or details of the independent contractor’s work. Elliott-Williams, 9 S.W.3d 
at 804. The right of control must extend to the “operative detail” of the independent
contractor’s work so that it is not free to do the work in its own way. 
Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 356 (Tex. 1998). The control
must relate to the injury that the negligence causes, and the contract must grant the
contractor at least the power to direct the order in which work is to be done. 
Elliott-Williams, 9 S.W.3d at 804. It is not enough that the general contractor has the
right to order work to stop and start, to inspect progress, or to recommend a safe
manner for the independent contractor’s employees to perform their work. See
Bright, 89 S.W.3d at 607–08. “[M]erely exercising or retaining a general right to
recommend a safe manner for the independent contractor’s employees to perform
their work is not enough to subject the [general contractor] to liability.” Koch
Refining Co. v. Chapa, 11 S.W.3d 153, 155 (Tex. 1999). That is, the retained right
of control must be more than general or supervisory for liability to attach. Mendez,
967 S.W.2d at 356. 
          As recognized by the Elliott-Williams court, comment c to section 414
expounds on the degree of retained control required to create a duty:
[T]he employer must have retained at least some degree of control over
the manner in which the work is done. It is not enough that he has
merely a general right to order the work stopped or resumed, to inspect
its progress or to receive reports, to make suggestions or
recommendations which need not necessarily be followed, or to
prescribe alterations and deviations. Such a general right is usually
reserved to employers, but it does not mean that the contractor is
controlled as to his methods of work or as to operative detail. There
must be such a retention of a right of supervision that the contractor is
not entirely free to do the work in his own way.
Restatement (Second) of Torts § 414 cmt. c (1965); Elliott-Williams, 9 S.W.3d
at 804.
          2.       The Prime Contract 
          In response to DW&S’s motion for summary judgment, appellants contended
that DW&S owed Molina a duty of care because it had a contractual obligation to
control Hernandez Concrete’s work at the construction site.


 Specifically, appellants
asserted that DW&S had a contractual right of control that was derived from the
prime contract between DW&S and Three Properties, which appellants attached to
its response.



          The prime contract contained standard form provisions published by the
American Institute of Architects. Appellants pointed to the following provisions as
evidence that DW&S possessed the requisite contractual control over Hernandez
Concrete’s work:
ARTICLE 3 CONTRACTOR
. . . .
3.3.1 [DW&S] shall supervise and direct the Work using [its] best skill
and attention. [DW&S] shall be solely responsible for all construction
means, methods, techniques, sequences and procedures and for
coordinating all portions of the Work


 under the Contract, . . . .
 
3.3.2 [DW&S] shall be responsible to [Three Properties] for acts and
omissions of [its] employees, Subcontractors and their agents and
employees, and other persons or entities performing portions of the
Work for or on behalf of [DW&S] or any of its Subcontractors.
 
. . . . 
 
3.4.2 [DW&S] shall enforce strict discipline and good order among [its]
employees and other persons carrying out the Contract. [DW&S] shall
not permit employment of unfit persons or persons not skilled in tasks
assigned to them.
 
. . . .
 
3.7.2 [DW&S] shall comply with and give notices required by laws,
ordinances, rules, regulations and lawful orders of public authority
applicable to performance of the Work.
 
. . . .

          ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY
 
10.1.1 [DW&S] shall be responsible for initiating, maintaining and
supervising all safety precautions and programs in connection with the
performance of the Contract. 
 
10.2.1 [DW&S] shall take all reasonable precautions for the safety of,
and shall provide all reasonable protection to prevent damage, injury or
loss to:
 
.1 employees on the Work and all other persons who may
be affected thereby . . . .
          Whether there is a contractual right of control is generally a question of law for
the court. Elliott-Williams, 9 S.W.3d at 803. Our primary consideration when
interpreting a contract is the parties’ intent as expressed in the instrument. Id. As
with any contract interpretation, we must not view these provisions in isolation, but
consider them in the context of the contract as a whole. See Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003). Viewing the contract
in its entirety furthers the objective of giving effect to the written expression of the
parties’ intent. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). 
Thus, it is imperative to examine all provisions of the prime contract to place those
provisions cited by appellants in proper context and to give effect to the intent of
DW&S and Three Properties when they entered into the agreement. 
          Here, the prime contract provides that it “shall not be construed to create a
contractual relationship of any kind . . . between any persons or entities other than
[Three Properties] and [DW&S].” The contract required DW&S to indemnify Three
Properties for, inter alia, personal injury claims resulting from performance of “the
Work” to the extent that such claims were caused by the negligence of DW&S or its
subcontractors. The prime contract also contemplated that DW&S would enter into 
separate contracts with its subcontractors and directed DW&S to require its
subcontractors “to assume toward [DW&S] all the obligations and responsibilities,
including the responsibility for safety of the Subcontractor’s work,” which DW&S
had assumed toward Three Properties. 
          Considering them in the context of the prime contract as a whole, the
provisions cited by appellants did not impose a contractual duty of care as claimed
by appellants. The express language of the contract made clear that it governed only
the relationship between DW&S and Three Properties and served to allocate the
rights and responsibilities between them exclusively. In this regard, the overarching
purpose of the contract is revealed: to insulate Three Properties from tort liability and
to create a duty of fiscal responsibility flowing from DW&S to Three Properties for
claims arising from the construction project. 
          When read in context, the cited provisions did not require DW&S to retain
control over the means, methods, or details of any subcontractor’s work. Rather, they
(1) required DW&S to be responsible to Three Properties for Hernandez Concrete’s
work or its actions and (2) required DW&S to exercise broad, supervisory powers
over the work at the site. See Legros v. Lone Star Striping and Paving, LLC, No.
14–05–00088–CV, 2005 WL 3359740, at *2 (Tex. App.—Houston [14th Dist.] Dec.
6, 2005, no pet.) (mem. op.) (interpreting similar contract language not to establish
contractual right of control over subcontractor’s work, but, rather as establishing
rights between premises owner and general contractor only); see also Elliott-Williams, 9 S.W.3d at 806 (concluding no contractual control created by prime
contract because parties intended only to create financial responsibility flowing from
general contractor to military and did not intend to impose control over
subcontractor’s work). 
          We recognize that the cited provisions found in article 10 are particularly
salient because they pertain to control over safety practices for work performed on the
construction project. The language found in these provisions required broad
supervision of workplace safety and demanded only that DW&S set minimum safety
standards. “[T]he retention of a general right to recommend a safe manner for
employees to perform their work does not create liability. To hold otherwise would
work against public policy by discouraging owners and general contractors from
implementing any safety regulations for fear of incurring liability.” Legros, 2005 WL
3359740, at *3 (internal citation omitted).
          “For the general contractor to be liable for negligence, its supervisory control
must relate to the condition or activity that caused the injury.” Clayton W. Williams,
Jr., Inc. v. Olivo, 952 S.W.2d 523, 528 (Tex. 1997); see Exxon v. Tidwell, 867 S.W.2d
19, 23 (Tex. 1993) (emphasizing that “[t]he focus should be on whether Exxon had
the right to control the alleged security defects that led to Tidwell’s injury”). “This
emphasis on the nexus between an employer’s retained supervisory control and the
condition or activity that caused the injury” results in the scope of the general
contractor’s duty toward a subcontractor’s employee being limited to the scope of the
general contractor’s retained supervisory control. Mendez, 967 S.W.2d at 357
(emphasis omitted). “In sum, the employer’s duty of care is commensurate with the
control it retains over the contractor’s work.” Id.
          Here, appellants alleged that DW&S breached its duty of care to Molina by
failing to do the following: (1) properly train Molina, or insure that he was already
properly trained, in the safe operation of the front loader; (2) properly supervise
Molina to insure that he was operating the front loader safely; (3) inspect the front
loader to determine its safety; (4) prevent Molina from operating the front loader
without assistance, including changing an attachment on the equipment; (5) stop or
prevent a “dangerous activity in which Molina was engaged,” i.e., the operation of
the front loader; and (6) require Molina to wear a hard hat or other headgear. 
          The provisions found in article 10 of the prime contract imposed a broad duty
on DW&S to supervise safety and required only that DW&S promulgate and enforce
minimum safety standards. Such general safety requirements did not impose an
unqualified duty of care on DW&S to ensure that Hernandez Concrete employees did
nothing unsafe. See id. at 357–58. That is, the record reveals no nexus between the
broad duties imposed on DW&S by the prime contract and appellants’ specific
allegations of negligence against DW&S regarding Molina’s operation of the front
loader. Appellants have not alleged or shown that DW&S implemented safety
measures that caused Molina’s injuries nor have they alleged or shown that DW&S
was aware that Hernandez Concrete engaged in unsafe practices. See Lee Lewis
Constr., 70 S.W.3d at 784 (holding that general contractor has actually exercised
control of premises when general contractor knew of dangerous condition before
injury occurred and approved acts that were dangerous and unsafe); Mendez, 967
S.W.2d at 358 (“[A]n employer who is aware that its contractor routinely ignores
applicable federal guidelines and standard company policies related to safety may
owe a duty to require corrective measures to be taken or to cancel the contract.”);
Enserch Corp. v. Parker, 794 S.W.2d 2, 6 (Tex. 1990) (holding that Enserch’s
providing of book detailing exact procedures to be followed while working on
pipeline and frequent visitation and supervision of contractor’s employees by Enserch
representatives created fact question about Enserch’s right to control work);
Redinger, 689 S.W.2d at 418 (holding general contractor liable who was present to
observe danger and gave order causing plaintiff’s injury). 
          In sum, because the prime contract, as a matter of law, did not require DW&S
to control the means, methods, or details of how Hernandez Concrete performed the
work, the prime contract constituted no evidence that DW&S owed Molina a duty to
ensure that Molina’s operation of the front loader was safe.



 
          3.       Conclusion Regarding DW&S’s Motion for Summary Judgment 
          Based on the summary judgment record and the applicable legal principles
governing general contractor liability, we conclude that appellants did not offer more
than a scintilla of evidence to show that DW&S had a right to control Hernandez
Concrete’s work. We hold that the trial court properly granted DW&S’s no-evidence
motion for summary judgment.



          We overrule appellants’ first issue.
Negligence Per Se and Gross Negligence Claims Against DW&S
          DW&S’s summary judgment also applied to appellants’ negligence per se
claims, which were based on DW&S alleged violations of federal law, including
OSHA regulations, and to appellants’ exemplary damages claim, which were based
on alleged gross negligence. Appellants do not raise an issue on appeal as to the trial
court’s granting of summary judgment on the negligence per se or gross negligence
claims, or otherwise specifically brief those issues. Thus, appellants waived any error
with regard to those claims. See Jacobs v. Satterwhite, 65 S.W.3d 653, 655 (Tex.
2001) (citing San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 209–10 (Tex. 1990)). 
To the extent that appellants assert that challenges to those claims are contained in
their arguments relating to whether DW&S owed a duty to Molina, they are
inadequately briefed. See Tex. R. App. P. 38.1(h). 
Three Properties’s Motion for Summary Judgment
          In their second and third issues, appellants challenge the trial court’s granting
of summary judgment in favor of Three Properties based on section 95.003 of the
Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 95.003
(Vernon 2005). Section 95.003 provides as follows:
A property owner is not liable for personal injury, death, or
property damage to a contractor, subcontractor, or an employee of a
contractor or subcontractor who constructs, repairs, renovates, or
modifies an improvement to real property, including personal injury,
death, or property damage arising from the failure to provide a safe
workplace unless:
 
(1) the property owner exercises or retains some control
over the manner in which the work is performed, other than
the right to order the work to start or stop or to inspect
progress or receive reports; and
 
(2) the property owner had actual knowledge of the danger
or condition resulting in the personal injury, death, or
property damage and failed to adequately warn. 

Id. 
A.      Preemption by Federal Law
          In their third issue, appellants assert that section 95.003(2), providing that “the
property owner had actual knowledge of the danger or condition resulting in the
personal injury, death, or property damage and failed to adequately warn” is
preempted by federal law. See id. Appellants contend that Three Properties was
required to comply with “all federal laws, rules and regulations applicable to the
construction project” because Three Properties had obtained “federal financial
assistance” for the project and had contractually agreed to be bound by applicable
federal law. We conclude that appellants’ preemption claim is without merit.
          If a state law conflicts with federal law, it is preempted and has no effect.”
Great Dane Trailers, Inc. v. Estate of Wells, 52 S.W.3d 737, 743 (Tex. 2001); see
also U.S. Const. art. VI, Clarendon. 2 (“The laws of the United States are the
‘supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to
the Contrary notwithstanding’”). Federal law may impliedly preempt state law if it
is impossible for a private party to comply with both state and federal requirements
or if state law obstructs accomplishing and executing Congress’s full purposes and
objectives. Great Dane Trailers, 52 S.W.3d at 743.
          Here, appellants contend that federal law and regulations pertaining to
workplace safety in the construction industry impliedly preempt section 95.003(2).
Specifically, appellants claim that section 95.003(2) is impliedly preempted by
provisions of OSHA regulations, found in 29 C.F.R. part 1926, and with the Contract
Work Hours and Safety Standards Act (“the CWHSSA”),


 which appellants allege
apply to Three Properties and pertain to regulation of workplace safety in the
construction industry.


 Appellants contend that section 95.003(2) conflicts with the
CWHSSA and 29 C.F.R. part 1926. 
          In their brief, appellants explain the “conflict” as follows:
The requirement in § 95.003(2), that a property owner can be liable for
the death of an employee of a subcontractor due to an unsafe workplace
only if he had actual knowledge of the danger or condition resulting in
the death and failed to give adequate warning, has no counterpart in the
above referenced federal standards to which Three Properties became
bound in the Loan Agreement. It is not a precondition for holding
affected parties accountable for violations of OSHA, the CWHSSA, or
other health and safety requirements in 29 C.F.R. pt. 1926, that the party
first must have had actual knowledge of danger and must have failed to
give an adequate warning about it. Since these preconditions under state
law for liability conflict with the applicable federal requirements, they
are preempted and cannot be used to preclude the pending action against
Three Properties. 
          To the extent that appellants contend that section 95.003(2) prevents them from
asserting tort claims against Three Properties, which they would otherwise be entitled
to assert under either OSHA regulations or the CWHSSA, appellants’ contention does
not succeed. Regulations promulgated under the OSHA statute neither create an
implied cause of action nor establish negligence per se. McClure v. Denham, 162
S.W.3d 346, 353 (Tex. App.—Fort Worth 2005, no pet.) (citing Melerine v. Avondale
Shipyards, Inc., 659 F.2d 706, 707 (5th Cir. 1981) (recognizing that OSHA was
adopted to assure safe and healthful working conditions)). Likewise, the provisions
of the CWHSSA do not provide for a private right of action. See 40 U.S.C.S.
§§ 3701–3708 (Law. Co-op. 2003 & Supp. 2005). 
          Appellants also have not shown that section 95.003(2) in any manner obstructs
the administrative enforcement of either the cited OSHA regulations or the CWHSSA
by the assigned federal regulating agency. Appellants have not demonstrated that
section 95.003(2) frustrates the envisioned Congressional purposes or objectives of
the cited OSHA regulations or the CWHSSA and has not shown that section
95.003(2) relieves Three Properties of any obligations it may have under the cited
federal authorities. Nor have appellants demonstrated that section 95.003(2) makes
it impossible for Three Properties to comply with the referenced federal authorities. 
Thus, appellants’ preemption argument does not succeed.
          We overrule appellants’ third issue.
B.      No Appellate Challenge to Claim of No-Evidence of Actual Knowledge           As gleaned from the “issues presented” section of their brief, we read
appellants second issue to assert that the trial court erred in granting summary
judgment because Three Properties possessed the requisite control over the work at
the construction site. Both conditions of section 95.003, control and knowledge, must
be met, however, before liability will be imposed upon the property owner. Francis
v. Coastal Oil & Gas Corp., 130 S.W.3d 76, 83 (Tex. App.—Houston [1st Dist.]
2003, no pet.). It is the plaintiff’s burden to prove both prongs of section 95.003. Id.
          In the trial court, Three Properties filed a no-evidence motion for summary
judgment, asserting that no evidence existed as to either control or knowledge. 
Appellants responded, addressing both prongs. The trial court granted summary
judgment to Three Properties without stating its reason in the order or the final
judgment. 
          Appellants do not contend on appeal that they met their summary judgment
burden in the trial court as to the actual knowledge requirement. When, as here, a
summary judgment does not state the specific grounds on which it was granted, a
party appealing from the judgment must show that each of the independent arguments
alleged in the motion is insufficient to support the judgment. Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995); see Wrenn v. G.A.T.X. Logistics, Inc., 73
S.W.3d 489, 493 (Tex. App.—Fort Worth 2002, no pet.) (holding that, when
summary judgment rests on more than one ground, appellant must challenge each
ground on appeal, or judgment will be affirmed on ground about which no complaint
is made). Because appellants do not challenge the no-evidence ground regarding the
actual knowledge requirement, we must affirm summary judgment in Three
Properties’s favor. See Ellis v. Precision Engine Rebuilders, Inc., 68 S.W.3d 894,
898 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Zapata v. ACF Indus., Inc., 43
S.W.3d 584, 586 (Tex. App.—Houston [1st Dist.] 2001, no pet.). 
          We overrule appellants’ second issue.
Granting of Motions for Summary Judgments of Remaining Defendants
          We liberally construe the fourth issue stated in appellants’ “issues presented”
section of their brief as complaining of the summary judgments granted to the three
Sowell individuals (Michael, Donald Wesley, and Beatrice) and to DSD.


 
Appellants’ fourth issue, however, appears only in the “issues presented” portion of
their brief. There are no supporting arguments for these issues in the argument
section of the appellants’ brief, as required by appellate rule of procedure 38.1(h). 
See Tex. R. App. P. 38.1(h). Appellees point out the deficiencies in appellants’
briefing. 
          Appellants made some effort to explain the lack of briefing in their reply brief
with regard to the three Sowell individuals (but not with regard to DSD). However,
appellants provide no substantive, legal analysis of the issues involved nor citation
to any authority. See id. Accordingly, appellants present nothing for review with
respect to their challenge to the granting of the motions for summary judgment of the
remaining appellees. See Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837, 854 (Tex.
App.—Houston [1st Dist.] 1998, pet. dism’d by agr.) (holding that points or issues
lacking supporting argument present nothing for review). 
          Briefing deficiencies aside, appellants acknowledge in their reply brief that
their claims against the Sowell individuals were derivative of their primary claims
against DW&S and Three Properties. Though not mentioned in the briefing,
appellants’ claims against DSD were also derivative of their primary claims. We have
held that summary judgment was appropriate on appellants’ claims against DW&S
and Three Properties. Thus, summary judgment was also appropriate in favor of the
three Sowells and DSD. 
          We overrule appellants’ fourth issue.
 

Conclusion
          We affirm the judgment of the trial court. 




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Nuchia, Jennings, and Higley.