

IN THE
TENTH COURT OF APPEALS

—————————

No. 10-10-00415-CV

VERONICA HERNANDEZ GOMEZ, INDIVIDUALLY,
AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF VICTOR GOMEZ, DECEASED, AND ON
BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES,
                                                            Appellant
 v.

CHARTER BUILDERS, LTD,
                                                            Appellee

—————————

From the 170th District Court
McLennan County, Texas
Trial Court Nos. 2008-2947-4 & 2010-3704-4

## MEMORANDUM OPINION

Veronica Hernandez Gomez, individually, and as personal representative of the

Estate of Victor Gomez,[1] appeals from the trial court's order granting Charter Builders,

LTD's motion for summary judgment and an adjudication against Gomez of her claims

against Charter. Because the trial court did not err in granting the motion for summary

judgment, we affirm the trial court's order.

---

[1] We will refer to both as "Gomez."

## BACKGROUND

Victor Gomez was a helper with Leland Collier Electric Co. He had been working there for approximately one month. About 30 minutes from quitting time on a project at Ennis High School, Victor asked his uncle, who also worked for LC, what further work he could do. His uncle told Victor to start wiring in some light fixtures. The uncle knew the line to the fixtures was energized. Victor wired in at least two fixtures before he was electrocuted and was killed. Charter was the general contractor for the Ennis High School project. LC was an independent contractor for Charter on the project.

Gomez sued Charter and LC under various theories of negligence. Charter filed a motion for summary judgment alleging that: 1) it did not owe Victor any duty of care because it did not have the right to control LC's and Victor's work; and 2) there was no evidence that Charter, if it did have the right to control LC's and Victor's work, exercised such control in an unreasonable manner. The trial court granted Charter's motion without specifying the ground upon which it relied and then severed the action against Charter from the remaining suit.

## SUMMARY JUDGMENT EVIDENCE

In her first and second issues, Gomez argues that the trial court erred in failing to grant her objections and special exceptions to Charter's motion for summary judgment and attached evidence and in failing to grant her objections to the summary judgment

evidence attached to Charter's reply to Gomez' response to the motion for summary judgment. Gomez clarified in her reply brief that she believes the trial court erred in impliedly overruling her objections and special exceptions. Gomez, however, failed to secure a ruling on those objections and special exceptions.

This Court has held that the granting of a summary judgment motion does not necessarily provide an implicit ruling that either sustains or overrules objections to the summary judgment evidence. *Allen v. Albin*, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002, no pet.). There is nothing in this record that shows the trial court impliedly overruled Gomez' objections and special exceptions. Thus, Gomez' first and second issues are overruled. *See id.*; *Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.) ("Appellants lodged numerous objections to Aledo's and Norman's summary judgment evidence. The court granted both motions without elaboration. We cannot imply a ruling on Appellants' objections from this record. *See Allen*, 97 S.W.3d at 663; *Dolcefino*, 19 S.W.3d at 926-27. Accordingly, we conclude that Appellants' second issue is without merit.").

## SUMMARY JUDGMENT

In her third issue, Gomez contends that the trial court abused its discretion when it granted Charter's motion for summary judgment.

**Standard of Review**

We review the trial court's granting of a motion for summary judgment de novo.

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movants in a traditional summary judgment motion must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). When reviewing a summary judgment, we take as true all evidence favorable to the non-movants, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. The granting of a no-evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed if any of the grounds stated in the motion is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

**Negligence**

To sustain a negligence action, a plaintiff must produce evidence of a relationship from which a legal duty is owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). Charter argued in its traditional motion for summary judgment that it owed no duty of care to Victor.

*Duty of Care*

Whether Charter owed Victor a duty of care is governed by the law concerning a general contractor's duties to a subcontractor's employees. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002). Generally, a premises owner or occupier of land does not owe any duty to ensure that an independent contractor performs his work in a safe manner. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999); *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998); *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex. 1976). Further, a general contractor owes the same duty as a premises owner to an independent contractor's employee. *Koch*, 11 S.W.3d at 155 n. 1; *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997).

However, a general contractor *may* owe a duty of reasonable care to an independent contractor's employee, and consequently may be liable for injury to that employee, if the general contractor retains control[2] over part of the work to be performed. *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). *Accord Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). Merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner

---

[2] This right to control doctrine applies to independent contractor negligent activities cases as well as independent contractor created premises defect cases. *Olivo*, 952 S.W.2d at 528 (Tex. 1997). It appears that this case is a negligent activity case.

to liability. *Koch*, 11 S.W.3d at 155. For liability to attach, the general contractor's role "must be more than a general right to order the work to start or stop, to inspect progress or receive reports." *Dow*, 89 S.W.3d at 606 (quoting *Redinger*, 689 S.W.2d at 418). *Accord Shell Oil Co. v. Khan*, 138 S.W.3d 288, 294, 295 (Tex. 2004) (a general requirement that work be done by a certain time and a right to receive reports do not establish a right to control). "There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Koch*, 11 S.W.3d at 155 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c.); *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998). The more detailed the general contractor's control over the independent contractor's work, the greater is the general contractor's responsibility for any injuries that result. *Hoechst-Celanese*, 967 S.W.2d at 356. Further, there must be a nexus between a general contractor's retained supervisory control and the condition or activity that caused the injury. *Dow*, 89 S.W.3d at 606, 607; *Hoechst-Celanese*, 967 S.W.2d at 357; *Olivo*, 952 S.W.2d at 528.

A party can prove right to control in two ways: first, by evidence of a contractual agreement; and second, by evidence that the general contractor actually exercised control over the manner in which the independent contractor's work was performed. *Dow*, 89 S.W.3d at 606; *Lee Lewis*, 70 S.W.3d at 783; *Koch,* 11 S.W.3d at 155.

Charter alleged it did not retain contractual control or exercise actual control over the manner in which LC's work was performed. It attached its contract with LC

and affidavits of Jeremy Medlin, LC's superintendent for the Ennis High School project, and Darren Lee, Charter's project manager for the Ennis High School project, to its motion for summary judgment. Both Medlin and Lee asserted that Charter did not exercise control over LC's work or its employees.

*Contract*

Gomez argued in her response to Charter's motion for summary judgment and argues on appeal that there is a genuine issue of material fact whether Charter contractually retained some control over the work performed by LC employees. She points to various provisions in the contract between Charter and LC attached to Charter's motion for summary judgment.

Specifically, Gomez points to paragraph 1(A) of the contract where she claims that LC was given 55 specific things it must do to complete the electrical work for the project. For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). However, this was a non-comprehensive list of what LC was to provide in labor, material, equipment and supervision. It was not a list which gave Charter "the right to control the means, methods, or details" of LC's work.

Gomez also points to paragraph 1(C) where LC agreed to 19 additional special provisions. Of the 19 provisions, only 5 are pertinent to whether Charter contractually

exercised control over LC. Those provisions, however, deal with strict compliance with Charter's safety procedures and compliance with project delivery times as determined by Charter's project superintendent.

A general requirement that work be done by a certain time is insufficient to show right of control. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004). Thus, Charter's provision for compliance with project delivery times to be determined at a later date does not show a right of control. Further, a contract requiring independent contractors to comply with general safety practices and train their employees to do so does not constitute a right to control. *Id*. at 293-294; *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999). Instead, requiring an independent contractor's employees to learn and follow general safety procedures subjects a general contractor only to a narrow duty to avoid increasing the risk of injury. *Shell Oil*, 138 S.W.3d at 294. In other words, compliance with the general contractor's safety requirements and procedures must not unreasonably increase the probability and severity of injury. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002); *Koch*, 11 S.W.3d at 156; *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998). There is nothing in the summary judgment evidence to indicate that Charter's contractual provisions regarding safety compliance unreasonably increased the probability of Victor's electrocution and death. Thus, these provisions in paragraph 1(C) do not establish a right to control.

Gomez also points to paragraph 7 which gives the construction manager the

complete control of the project premises and the right to decide the time and order that various portions of work is to be done or the priority of the work of other sub-contractors. Paragraph 7 also gives the construction manager the ability to prepare a coordinated progress schedule for the construction manager's and all the subcontractors' benefit; and if prepared, LC was required to perform work in accordance with the schedule or as it might be modified. Gomez quotes the Texas Supreme Court in *Hoechst-Celanese* as support for her proposition that paragraph 7 gives rise to a duty because Charter retained "only the power to direct the order in which the work shall be done…." *See Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998). However, the Supreme Court went on to say that there must be "such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* Contractually giving a contract manager some ability to control various subcontractors' schedules and work orders is not such a retention of supervision that gives rise to a duty of care.

Gomez further argues that the contract manager's complete control of the project premises creates a duty to maintain a safe workplace. At most, this may give rise to a narrow duty to avoid increasing the risk of injury. There is no indication in the record that any safety requirements and procedures promulgated by Charter unreasonably increased, rather than decreased, the risk of Victor's electrocution and death. *See id.*, at 358. Thus, no duty was created.

Gomez next cites to paragraph 8 of the contract, which gives a construction manager the ability to request alterations or deviations in the scope of the work to be done, as an example of retaining some degree of control over the manner of LC's work. But, again, that paragraph is not *such* a retention of a right of supervision that LC is not entirely free to do the work in its own way. *See Hoechst-Celanes*, 967 S.W.2d at 356.

Lastly, Gomez points to paragraph 31 of the contract, which allows the construction manager to notify LC that he thinks LC's supervision and workmen are not of satisfactory quality and requires removal of unqualified personnel within 48 hours of notification, as a demonstration of such a retention of control as to impose a duty of care. We disagree with Gomez. Again, this is not the type of provision that gives Charter the right to control the "means, methods, or details" of LC's work. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

After reviewing the contract provisions, we determine that Charter did not contractually retain the right to control so as to owe a duty of reasonable care to Victor.

*Actual Control*

Gomez also argues that there is a genuine issue of material fact regarding whether Charter exercised actual control over the manner in which LC's work was performed. Gomez relies on deposition testimony attached to her response to Charter's motion for summary judgment to support her argument. Several of LC's employees testified at depositions that Charter supervisors were at the job site every day, always

inspecting the LC employees to make sure they were working in a safe manner. Charter supervisors made sure the employees were wearing the correct safety gear and held meetings to explain how safety works on the job site. According to these LC employees, Charter supervisors would tell the LC employees if they were being unsafe such as being too high on a ladder. LC's vice president in charge of the northern division also testified that Charter had a safety person on the job site.

Requiring an independent contractor to "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions [does] not impose an unqualified duty of care on [a premises owner] to ensure that [an independent contractor's employees do] nothing unsafe." *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999). At most, this may give rise to a narrow duty to avoid increasing the risk of injury. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 294 (Tex. 2004); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002); *Koch*, 11 S.W.3d at 156; *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 358 (Tex. 1998). There is no indication in the summary judgment record that any safety requirements and procedures promulgated by Charter unreasonably increased, rather than decreased, the risk of Victor's electrocution and death. *See id*. Further, by merely placing a safety employee on the work site, Charter did not incur a duty to LC's employees to intervene and ensure that they safely performed the details of their work. *See Koch*, 11 S.W.3d at 157.

A general contractor actually exercises control of a premises when the general

contractor knows of a dangerous condition before an injury occurs and approves acts that are dangerous and unsafe. *Dow*, 89 S.W.3d at 609; *Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001). Likewise, a general contractor who is aware that its independent contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract. *Hoechst-Celanese*, 967 S.W.2d at 357. The Texas Supreme Court has never concluded that a general contractor actually exercised control of a premises where there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act. *Dow*, 89 S.W.3d at 609.

In this case, there is no summary judgment evidence that suggests that Charter was aware that LC routinely ignored safety standards which lead to Victor's death. Thus, Charter did not exercise actual control over the manner in which LC's work was performed.

**Conclusion**

Because Charter's summary judgment evidence established that it did not retain contractual control or exercise actual control over the manner of LC's work, Charter established as a matter of law that it owed no duty of reasonable care to LC's employees. We need not discuss Gomez' argument under this issue regarding whether Charter breached its duty of care. Accordingly, the trial court did not err in granting Charter's motion for summary judgment, and Gomez's third issue is overruled.

## CONCLUSION

Having overruled each of Gomez' issues on appeal, we affirm the trial court's order granting Charter's motion for summary judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed February 29, 2012
[CV06]