**HOECHST-CELANESE CORPORATION, Petitioner,**

v.

**Jesse MENDEZ, Jr., Respondent.**

No. 97–0860.

Supreme Court of Texas.

Feb. 13, 1998.

Reesa D. Hedrick, Houston, for Petitioner.

Ren Rodriguez, Corpus Christi, for Respondent.

## Opinion

PER CURIAM.

What is an employer's duty to an independent contractor's employees when the employer requires the contractor to observe general workplace safety guidelines? Hoechst–Celanese Corp. hired Mundy Contract Maintenance, Inc., an independent contractor, to perform various maintenance services at the Celanese plants. While performing a Celanese work order, a Mundy employee sustained serious injuries when he fell from the shelf of a large metal tool box he was using as a ladder. The employee sued Celanese and claimed that the tool box was a premises defect and that Celanese was negligent in exercising control over the safety practices of Mundy employees. The trial court granted summary judgment for Celanese, but the court of appeals reversed. —— S.W.2d ——.

■ We hold that an employer's duty of reasonable care is commensurate with the control it retains over the independent contractor. We conclude, in this case, that Celanese did not breach this duty. Therefore, we reverse the judgment of the court of appeals and render judgment for Celanese.

Jesse Mendez, Jr., a Mundy employee, climbed over a large metal tool box to position himself on the floor between the tool box and a wall to help his co-workers remove conduit from a Celanese facility. After he completed the task, he stepped on the tool box shelves to climb back over the tool box. Mendez lost his footing on some tools in one of the shelves and fell to the floor on his left ankle and left shoulder.

Celanese contractually required Mundy to train its employees in Celanese's safety-related rules and regulations, observe federal safety practices and regulations, and take all necessary precautions to keep its work areas

free of safety hazards. The contract further provided that Celanese had the right to inspect Mundy's facilities and operations at all times to ensure compliance with Celanese's safety-related requirements. One of Celanese's safety regulations prohibited employees from using an A-frame ladder without fully extending all four legs of the ladder to the floor.

Mendez claims that he used the tool box as a ladder because a fully-extended A-frame ladder would not fit where it was needed. Mendez offered expert deposition testimony that, under the circumstances, a ladder used in a lean-to fashion would have been most appropriate and safer than the toolbox.

 Generally, an owner or occupier of land does not owe any duty to ensure that an independent contractor performs his work in a safe manner. *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976). However, a duty may arise where the employer retains "some control over the manner in which the independent contractor's work is performed." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). In *Redinger,* this Court held that "Living, Inc. owed a duty to Redinger to exercise [its] supervisory control in a reasonable manner" because it "retained the power to direct the order in which the work was to be done and to forbid the work from being done in a dangerous manner." *Id.* We adopted section 414 of the *Restatement (Second) of Torts,* which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1965), *quoted in Redinger,* 689 S.W.2d at 418.

The comments to section 414 of the *Restatement* indicate that the more detailed the employer's control over the independent contractor's work, the greater is the employer's responsibility for any injuries that result. It explains that if the employer retains control over the "operative detail of doing any part of the work," like the control a master retains over a servant, then any negligence of the contractor is imputed to the employer under the law of agency. RESTATEMENT (SECOND) OF TORTS § 414 cmt. a. The duty under section 414 is directed to employers who "retain a control less than that which is necessary to subject him to liability as a master." *Id.* For example, a duty may arise if the employer "retain[s] only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others." *Id.* However, the comments further explain:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* § 414 cmt. c. In sum, the *Restatement* establishes a nexus between the employer's duty of care and its right of control.

Mendez argues that through its safety regulations, Celanese retained enough control over the manner and means by which Mundy employees performed their maintenance services to incur a duty to use reasonable care under section 414 of the *Restatement.* Mendez's argument implies, more specifically, that by promulgating safety procedures that prevented him from using an A-frame ladder as a lean-to ladder, Celanese owed him a duty to issue safety procedures or exercise sufficient supervisory control to prevent him from using the toolbox as a ladder.

Several courts of appeals reaching the same issue have held that an employer does *not* incur a duty of care by requiring its

contractor to comply with the employer's standard safety practices and applicable laws. *See, e.g., Davis v. R. Sanders & Associates Custom Builders, Inc.,* 891 S.W.2d 779, 782 (Tex.App.—Texarkana 1995, no writ) ("[A] requirement that work be performed in accordance with all applicable laws and safety regulations is ... a requirement pertaining to the *results* of the work, not the *details* of performance."); *Campbell v. Adventist Health System/Sunbelt, Inc.,* 946 S.W.2d 617, 623 (Tex.App.—Fort Worth 1997, no writ) (holding that requirement that subcontractor "take reasonable safety precautions in doing the subcontract work and comply with the safety measures of AHS and applicable laws or regulations .... does not retain for AHS the right to control the means, methods, or details ... in doing the subcontract work"); *Welch v. McDougal,* 876 S.W.2d 218, 223 (Tex.App.—Amarillo 1994, writ denied) (imposing no duty although general contractor "was authorized to ensure that the subcontractor's work was done properly, ... was expected to remedy hazards to the subcontractor's employees if he became aware of them, ... was authorized to order that the work be stopped if it was being done in an unsafe manner, and ... was authorized to fire a subcontractor for unsafe practices"); *Good v. Dow Chem. Co.,* 945 S.W.2d 877, 882 (Tex.App.—Houston [1st Dist.] 1997, no writ) (holding that "while Dow personnel may have been on site to observe compliance with safety procedures, Dow's retention of control did not rise to the level of control" sufficient to create a duty).

A better view, more consistent with the *Restatement* and this Court's precedents, is that safety requirements give rise to a *narrow* duty of care. In *Tovar v, Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex.1985) (per curiam), we held that an oil company breached a duty of care to a drilling contractor employee by not exercising its contractual right to suspend drilling operations when it became aware that the drilling contractor was violating a specific, critical safety provision in the drilling contract. In *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex.1993), we remanded a case for a more precise determination of duty, holding that "in a case alleging negligence in maintaining a safe work-

place, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations." This Court last revisited the duty of an employer toward its contractor's employees in *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523 (Tex.1997). There, we emphasized: "For the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury." *Id.* at 528. This emphasis on the *nexus* between an employer's retained supervisory control and the condition or activity that caused the injury suggests that while Celanese may indeed have had a duty of care under section 414, the *scope* of Celanese's duty toward Mundy employees was limited to the *scope* of its retained supervisory control.

Under this view, an employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract. *See, e.g., Tovar,* 692 S.W.2d at 470. Also, an employer who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent contractor employee a duty of reasonable care to protect him from work-related hazards. *See, e.g., Redinger,* 689 S.W.2d at 418 (holding general contractor liable who was present to observe the danger and gave the order that caused plaintiff's injury); *Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex.1990) (holding that Enserch's provision of a book detailing exact procedures to be followed while working on the pipeline and the frequent visitation and supervision of Christie's employees by Enserch representatives created a fact question about Enserch's right to control Christie's work). In sum, the employer's duty of care is commensurate with the control it retains over the contractor's work.

Applying this analysis to this case, Celanese's insistence that Mundy observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions did not impose an unqualified

duty of care on Celanese to ensure that Mundy employees did nothing unsafe. However, Celanese owed Mundy's employees a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury.

Mendez did not present any summary judgment evidence to show that Celanese's requirement that A-frame ladders be used in the manner for which they are intended was unreasonable. We acknowledge Mendez's expert deposition testimony that under the specific circumstances giving rise to his injury, the use of a ladder would have been safer and more appropriate than a toolbox. However, such testimony is no evidence that Celanese's requirement that tools and implements to be used in the manner for which they were intended is generally dangerous or unreasonable. To hold otherwise would deter employers from setting even minimal safety standards. *See Welch*, 876 S.W.2d at 224 ("We do not believe that a general contractor or an employer is required to stand idly by while another is injured or killed in order to avoid liability. Nor do we believe that the liability rules contemplate putting those who employ independent contractors in that position.").

In conclusion, because there was no evidence that Celanese exercised unreasonable care in insisting that Mundy comply with its safety standards, the court of appeals erred in reversing the judgment and remanding the entire case for trial. Accordingly, this Court grants Celanese's petition for review, and under Texas Rule of Appellate Procedure 59.1, without hearing oral argument, reverses the court of appeals' judgment and renders judgment that Mendez take nothing.