11th Court of Appeals
Eastland, Texas
Opinion
                                                         
Kim Howarton, Individually and as Next Friend
for Patricia Lynn Howarton and Harvey Lynn 
Howarton, and Marion Lynn Howarton, Sr.
            Appellants
Vs.                  No. 11-02-00280-CV – Appeal from Brown County
Minnesota Mining and Manufacturing, Inc.
            Appellee
 
            Marion Lynn Howarton, Jr. (Howarton) was electrocuted while working for Three Rivers
Electric Company, an independent contractor retained by Minnesota Mining and Manufacturing, Inc. 
(3M). After appellants


 settled other claims involving Three Rivers, their wrongful death suit against
3M continued. 3M filed a motion requesting summary judgment on traditional grounds as well as 
no-evidence grounds. The trial court entered a summary judgment in favor of 3M that appellants take
nothing in their suit against 3M. The trial court stated in its order that it had heard 3M’s “Motion for
Summary Judgment against [appellants] on the ground that there is no genuine issue of material fact
in this action.” 
            Appellants urge four issues on appeal. In “Issue 1,” appellants argue that the trial court erred
when it granted 3M’s motion for summary judgment. In “Issue 1, Subpoint A; Issue 1, Subpoint B;
and Issue 1, Subpoint C,” appellants assert claims directed toward 3M’s alleged failure to negate the
existence of various duties that 3M owed to Howarton. Because we find that 3M negated the existence
of any legal duty that it owed to Howarton, we affirm.
            3M based its motion for summary judgment on traditional grounds as well as no-evidence
grounds. TEX.R.CIV.P. 166a(c) and TEX.R.CIV.P. 166a(i). Because we hold that the trial court did
not err when it granted a traditional motion for summary judgment, we will not discuss 3M’s no-evidence motion. 
            If the movant in a traditional motion for summary judgment establishes that no genuine issue
of material fact exists and that the party is entitled to judgment as a matter of law, then the trial court
must grant the motion. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991). The trial court
must also grant a motion for a traditional summary judgment if a defendant conclusively negates at
least one element of the plaintiff’s claim. American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d
420, 425 (Tex.1997). Upon review of a traditional motion for summary judgment, we take as true
evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any
doubts in favor of the non-movant. American Tobacco Company, Inc. v. Grinnell, supra; Kelly v. LIN
Television of Texas, L.P., 27 S.W.3d 564 (Tex.App. – Eastland 2000, pet’n den’d). 
            Reviewed in the light most favorable to appellants, the summary judgment evidence shows that
3M entered into a standing contract with Three Rivers whereby it was agreed that Three Rivers would
perform electrical work as needed from time to time at 3M’s Brownwood plant. Under the terms of
the contract, if 3M wanted Three Rivers to perform electrical work at the plant, 3M issued a request
for that work by signing an “activating letter.” Three Rivers could either accept or reject the work. 
On January 5, 1995, 3M issued a general activating letter to Three Rivers. The activating letter
covered the period of time from January 1, 1995, to December 31, 1995. Specific requests under the
terms of the activating letter were made from time to time by 3M through shop work orders.
            Howarton worked for Three Rivers as a journeyman electrician. On August 21, 1995, he was
working on a ballast retrofit project at the 3M plant. The project involved replacing a ballast on a 277-volt circuit. The circuit was energized, and Howarton died when he came into contact with the
energized circuit. Appellants seek wrongful death damages against 3M. 3M takes the position that,
under the circumstances of this case, it owed no legal duty to Howarton.
            An owner of premises may be liable for negligence in failing to keep the premises safe in
connection with premise defects or in connection with activities conducted on the premises. Koch
Refining Company v. Chapa, 11 S.W.3d 153, 157 (Tex.1999). Appellants have not alleged a premise
defect; this is a negligent activity case.
            Negligence consists of three essential elements: (1) a legal duty owed by one person to another;
(2) a breach of that duty; and (3) damages proximately resulting from the breach. Duty is the threshold
inquiry. El Chico Corporation v. Poole, 732 S.W.2d 306, 311 (Tex.1987).
            The general rule is that an employer of an independent contractor does not have a duty to see
to it that the independent contractor performs its work in a safe manner. Abalos v. Oil Development
Company of Texas, 544 S.W.2d 627 (Tex.1976). However, if the employer retains some control over
the manner in which the work is done, then a duty may arise as a result of that control. Hoechst-Celanese Corporation v. Mendez, 967 S.W.2d 354 (Tex.1998). If there is no control over the work
of the independent contractor, then a legal duty does not arise. Elliott-Williams Co., Inc. v. Diaz, 9
S.W.3d 801 (Tex.1999).
            Control may be either actual or contractual. Elliott-Williams Co., Inc. v. Diaz, supra. A duty
may arise by virtue of a contract, even in the absence of actual control; and the employer of the
independent contractor may be liable unless the employer exercises reasonable care in supervising the
independent contractor’s activity. Elliott-Williams Co., Inc. v. Diaz, supra; Redinger v. Living, Inc.,
689 S.W.2d 415, 418 (Tex.1985). 
            Texas has adopted the limited-duty rule set forth in RESTATEMENT (SECOND) OF TORTS
§ 414 (1965) that, if a premises owner retains some control over the work of the independent
contractor, it must exercise that control with reasonable care. Section 414, cmt. c. Simply retaining
the general right to recommend a safe manner for the independent contractor’s employees to perform
their work is not enough to subject a premises owner to liability. Koch Refining Company v. Chapa,
supra. Section 414, cmt. c provides:
            In order for the rule stated in this Section to apply, the employer must have
retained at least some degree of control over the manner in which the work is done. 
It is not enough that he has merely a general right to order the work stopped or
resumed, to inspect its progress or to receive reports, to make suggestions or
recommendations which need not necessarily be followed, or to prescribe alterations
and deviations. Such a general right is usually reserved to employers, but it does not
mean that the contractor is controlled as to his methods of work, or as to operative
detail. There must be such a retention of a right of supervision that the contractor is
not entirely free to do the work in his own way. 
 
            Appellants have not argued that 3M exercised actual control. Therefore, we will determine
whether 3M contractually retained the type of control that would give rise to a legal duty owed to
employees of Three Rivers. Whether that right of control exists is generally a question of law. Dow
Chemical Company v. Bright, 89 S.W.3d 602, 606 (Tex.2002).
            In Elliott-Williams Co., Inc. v. Diaz, supra at 804, the court noted:
            For a general contractor to be liable for its independent contractor’s acts, it
must have the right to control the means, methods, or details of the independent
contractor’s work. Further, the control must relate to the injury the negligence
causes, and the contract must grant the contractor at least the power to direct the
order in which work is to be done. (Citations omitted)
 
            In their brief to this court, appellants refer to various provisions of the standing contract and
3M’s safety provisions as evidence that 3M contractually retained control over the work and,
therefore, owed a legal duty to employees of Three Rivers to see to it that the work was performed
in a safe manner. We will first examine the provisions of the standing contract relied upon by
appellants, and then we will examine 3M’s safety procedures upon which appellants rely.
            Article 20.1 of the standing contract provided that 3M may unilaterally require Three Rivers
to perform extra work or change work without invalidating the standing contract or without changing
the provisions of the standing contract except for terms regarding price and completion dates. This
is not the type of contractual provision by which 3M retains control over the means, methods, or
details of Three Rivers’s work. This clause of the contract created no legal duty as to 3M. See
Elliott-Williams Co., Inc. v. Diaz, supra at 804.
            Article 30 of the standing contract allowed 3M access to inspect the work. The article also
required that Three Rivers provide safe and proper access for any such inspection. The general right
to inspect did not give rise to the duty necessary to place liability upon 3M. Hoechst-Celanese
Corporation v. Mendez, supra at 356.
            Article 33.5 of the standing contract allowed 3M, if it deemed the work or any part of the work
site unsafe, to request that Three Rivers stop performance of the work and take corrective measures
satisfactory to 3M. The article also provided that 3M’s failure to notice or to stop unsafe practices
did not relieve Three Rivers of its duties under this provision. While a duty may arise if an employer
retains the power to forbid employees of its independent contractor from performing work in a
dangerous manner, that duty does not arise unless the employer retains the right to control the
independent contractor as to the methods or operative details of the work. Section 414, cmt. c;
Hoechst-Celanese Corporation v. Mendez, supra at 356. The right retained by the employer must be
such that the independent contractor is not entirely free to perform the work in its own way. Section
414, cmt. c; Koch Refining Company v. Chapa, supra at 155. 3M did not retain such rights of control
under this article of the standing contract sufficient to give rise to any duty to employees of Three
Rivers; it did not retain the right to control the means, methods, or operative details of the work.
            In Article 38.2 of the standing contract, 3M reserved:
[T]he right to determine the sequence in which the Work of [Three Rivers] and its
subcontractors shall be performed. In the exercise of said right, [3M] may direct
[Three Rivers] or its subcontractors, if any, to adapt its activities and the sequence
of the Work, and [Three Rivers] and its subcontractors shall do so accordingly, to
accord with the operations conducted at the Worksite by Others. In the exercise of
said right, if [3M] deems such necessary, [Three Rivers] shall cease the Work at any
particular point(s) and shall perform such directed portions of the Work as may be
required to enable others to proceed with their work properly.
 
            3M merely retained the right to schedule the work it wanted Three Rivers to perform. It did
not retain the right to control the means, methods, and operative details of the work. 3M did not
retain sufficient control under Article 38.2 to give rise to any duty of care owed to Three Rivers’s
employees under the circumstances of this case.
            Furthermore, Article 12.1 of the contract contains language whereby the parties agreed that
Three Rivers was an independent contractor; that its employees were subject solely to its control,
supervision, and authority; and that, “under no circumstances or for any purposes, [were] they to be
construed or considered to be [3M’s] employees.” Additionally, the parties agreed in Article 33.1
of the contract that Three Rivers was solely responsible for the safety and protection of persons at
the work site, including compliance with safety procedures and requirements. See Dow Chemical
Company v. Bright, supra at 606-07; Koch Refining Company v. Chapa, supra at 157.
            Appellants rely upon Redinger v. Living, Inc., supra. Living, Inc. was the general contractor
on a building project. David Yargo, Living, Inc.’s superintendent, was on the site preparing for a
concrete pour. Bobby Baird, a dirt subcontractor, was also working on the site, as was Louis
Redinger, who was an employee of a plumbing subcontractor. When the concrete trucks arrived,
Yargo noticed that piles of dirt left by Baird were blocking the concrete trucks. Yargo directed Baird
to move the dirt. Redinger was injured when the box blade on Baird’s tractor hit Redinger, causing
injuries to his left index finger. Redinger is distinguishable. There, unlike here, the general
contractor’s employee specifically directed the manner and means of the work to be performed. The
court there pointed out that “Yargo exercised supervisory control by coordinating the work
performed by two subcontractors.” The court also noted that there was evidence that Living, Inc.
was negligent when it allowed Baird to operate the tractor in Redinger’s presence and when it failed
to warn him. The duty that the court imposed upon the general contractor was a duty to exercise its
supervisory control in a reasonable manner. Redinger v. Living, Inc., supra at 418; see also Lee
Lewis Construction, Inc. v. Harrison, 70 S.W.3d 778 (Tex.2001)(where general contractor exercised
actual control over fall-protection equipment and owed a duty of care toward employee of
independent contractor injured when fall-protection equipment failed).
            Section 1.2(A) of 3M’s safety guidelines provided the purpose, scope, and philosophy of the
guidelines. Three Rivers was required to follow and to enforce the guidelines.
            Section 1.5(A) addressed work permits. 3M required that daily work permits be issued
before Three Rivers could enter the plant. Further, in accordance with Section 1.5(B)(9), under
certain circumstances, additional work permits could be required for certain activities such as
electrical work with an energized system. Section 1.5(C) provided for a change in conditions of the
work. If the conditions of the work were to change from that noted on the work permit, the “WORK
SHALL STOP IMMEDIATELY” while the new situation was studied and new work permits were
issued.
            According to the terms of Section 1.8(A), Three Rivers was required to be in compliance with
“Lockout/Tagout” before starting work that involved cutting, splicing, or tapping existing cables. 
Upon request from Three Rivers, 3M was to tag and identify all cables present in the area. It was the
responsibility of Three Rivers to make certain that the circuit upon which its employees were to work
was de-energized and the “source locked out.” (Emphasis in original) Three Rivers was to use its
own lock on the disconnect device and was also to review a one-line diagram to make certain that
there were no alternate power sources. In the event that it was necessary to work on energized electric
lines, only qualified Three Rivers personnel, using appropriate personal protection equipment, were
to do the work. This section also required that at least two people were to be assigned to work on
energized lines. The summary judgment evidence shows that those procedures were not being
followed at the time Howarton was killed.
            In Koch Refining, the injured worker claimed that Koch Refining owed him a duty of care
because Koch’s safety personnel had instructed the independent contractor’s employees on safety
matters in the past. The court rejected the argument because:
[R]equiring an independent contractor to “observe and promote compliance with
federal laws, general safety guidelines, and other standard safety precautions [does]
not impose an unqualified duty of care on [a premises owner] to ensure that [an
independent contractor’s employees do] nothing unsafe.” Rather, Koch at most owed
[the independent contractor’s] employees “a duty that any safety requirements and
procedures it promulgated did not unreasonably increase, rather than decrease, the
probability and severity of injury.”
 
Koch Refining Company v. Chapa, supra at 156 (citing Hoechst-Celanese Corporation v. Mendez,
supra at 357-58).
            The fact that 3M required Three Rivers to comply with 3M’s safety regulations is not evidence
that 3M exercised the degree of control necessary to create a duty of care. Further, it is not evidence
that 3M controlled or retained the right to control the means, methods, or operative details of the
work. Dow Chemical Company v. Bright, supra at 606-07; Koch Refining Company v. Chapa, supra. 
3M owed Three Rivers’s employees the narrow duty that 3M’s safety requirements did not
“unreasonably increase, rather than decrease, the probability and severity of injury.” Hoechst-Celanese Corporation v. Mendez, supra at 358. Appellants make no claim that the safety
requirements increased the probability or severity of injury. 
            Appellants argue that working on energized electrical lines is an inherently dangerous activity
and that 3M failed to negate the existence of a non-delegable duty that arose as a result of the
inherently dangerous activity. 3M points out that appellants have waived this argument because they
are making it for the first time on appeal. We agree that appellants did not present this issue to the
trial court. In summary judgment matters, non-movants must expressly present to the trial court all
issues that would defeat the movant’s right to a summary judgment. If the non-movant fails to do so,
the issues cannot later be assigned as error on appeal. City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 679 (Tex.1979).
            Because 3M negated the duty element of appellants’ cause of action, the trial court did not err
when it granted 3M’s motion for summary judgment. Appellants’ “Issue 1; Issue 1, Subpoint A; Issue
1, Subpoint B; and Issue 1, Subpoint C” are overruled.
            The judgment of the trial court is affirmed. 
 
                                                                                    JIM R. WRIGHT
                                                                                    JUSTICE
 
April 8, 2004
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.