

# NUMBER 13-08-00739-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE VARGAS,                                                      Appellant,

v.

COMMERCIAL BUILDING SYSTEMS
OF McALLEN, LTD.,                                                 Appellee.

On appeal from the 370th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Jose Vargas, challenges the trial court's summary judgment in favor of appellee, Commercial Building Systems of McAllen, Ltd. ("CBS"), in a case pertaining to injuries that Vargas received while performing concrete testing at a construction project. By two issues, Vargas contends that the trial court erred in granting CBS's summary judgment motions because: (1) there was probative summary judgment evidence that CBS

controlled the means, methods, and manner of his work; and (2) he raised a genuine issue of material fact regarding CBS's liability for his injuries. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Vargas is a quality control technician for TSI Laboratories, Inc. ("TSI"). CBS, acting as the general contractor, hired TSI to conduct quality control testing on a concrete pour at a project involving the construction of an O'Reilly's Auto Parts store in Pharr, Texas.[1] On February 2, 2006, while conducting the concrete testing at approximately 5:00 a.m., Vargas slipped and fell from a pump truck and was injured.

On April 5, 2007, Vargas filed suit against CBS, among others, contending that his injuries were proximately caused by CBS's negligence in failing to adequately illuminate the project site.[2] CBS filed its first amended original answer generally denying the allegations contained in Vargas's original petition and asserting various affirmative defenses.

Later, CBS filed a traditional motion for summary judgment, arguing that: (1) general contractors do not have a general duty to ensure that independent contractors perform their work in a safe manner; (2) CBS did not exercise control over Vargas's work; and (3) section 95.003 of the civil practice and remedies code precludes Vargas's claims against CBS. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (Vernon 2005).[3]

---

[1] It is undisputed that TSI was an independent contractor on the construction project.

[2] Vargas and CBS are the only parties to this appeal.

[3] Section 95.003 of the civil practice and remedies code provides that a premises owner is not liable for the personal injury, among other things, to a contractor, subcontractor, or employee of either for the construction, repair, renovation, or modification of real property arising from the failure to provide a safe workplace unless the premises owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(1) (Vernon 2005). In addition, a plaintiff must also prove that the premises owner actually knew of the dangerous condition that resulted in the injury and that the premises

2

CBS subsequently filed a no-evidence motion for summary judgment, arguing that the record contains "no evidence that CBS retained control over the manner, methods[,] and means of Plaintiff's work to impart liability on CBS for Plaintiff's injuries." Vargas filed a response to CBS's traditional and no-evidence motions for summary judgment, asserting that his summary judgment evidence demonstrated that CBS exercised actual control over the project and that CBS's failure to provide adequate lighting violated several Occupational Safety and Health Administration ("OSHA") regulations. CBS filed an amended traditional motion for summary judgment motion, addressing Vargas's contention that CBS violated several OSHA regulations.

The trial court granted summary judgment in favor of CBS and ordered that Vargas take nothing and CBS recover court costs. In its order, the trial court did not specify the grounds upon which it granted summary judgment, or which summary judgment motion was granted, but it did note that the judgment was final and appealable. This appeal ensued.

## II. STANDARDS OF REVIEW

We first review the granting of summary judgment based on the standards of rule 166a(i)—the rule governing no-evidence summary judgment motions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see* TEX. R. CIV. P. 166a(i). Under rule 166a(i), the movant must allege that there is no evidence of a material element of the adverse party's claims. TEX. R. CIV. P. 166a(i); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). While not required to marshal its proof, the nonmovant must produce summary judgment evidence that raises a genuine issue of material fact.

owner failed to adequately warn of the danger. *Id.* § 95.003(2).

3

*Ridgway*, 135 S.W.3d at 600; *Grant*, 73 S.W.3d at 215.

A genuine issue of material fact exists when there is more than a scintilla of evidence produced to support the existence of the challenged element. *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence is that amount of evidence that would allow reasonable and fair-minded people to disagree in their conclusions. *Id.* at 601. If the evidence only creates a mere surmise or suspicion of the fact, then the evidence is less than a scintilla. *Id.* If Vargas, the nonmovant, produces more than a scintilla of evidence, then we consider whether he has met the burden imposed by rule 166a(c)—the rule pertaining to traditional motions for summary judgment. *Id.*; *see* TEX. R. CIV. P. 166a(c).

Because a no-evidence motion for summary judgment is essentially a pretrial directed verdict, we apply the legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Therefore, we consider the evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

### III. APPLICABLE LAW

In order to sustain a negligence cause of action, a plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam); *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995). Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). The duty element of

4

Vargas's negligence claim is at issue in this case.

## IV. ANALYSIS

In his first issue, Vargas asserts that the record contains probative summary judgment evidence demonstrating that CBS controlled the means, methods, and manner of his work; therefore, CBS owed him a duty to adequately light the work site.[4] Vargas further argues that summary judgment was improper because the summary judgment evidence shows that CBS's negligence proximately caused his injuries. CBS counters by arguing that the summary judgment evidence establishes that: (1) it did not control the means, methods, and manner of Vargas's work; and (2) Vargas was the employee of an independent contractor to which no duty was owed. CBS therefore contends that no issue of material fact exists as to the control issue and that it was entitled to judgment as a matter of law.

### 1. Vargas's Premises Condition Claim

Vargas alleged that CBS failed to provide adequate lighting for him to complete his job. Generally, "[a] general contractor owes the same duty as a premises owner to an independent contractor's employee." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605-06 (Tex. 2002) (quoting *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam)). A premises owner may be liable to an independent contractor's employees "only for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed: 'With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of *concealed* hazards the

---

[4] In reviewing the record and Vargas's arguments on appeal, it appears that Vargas brought both a negligent activity claim and a premises condition claim.

owner knows or should have known about.'" *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008) (citations omitted) (emphasis in original); *see Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999) ("[T]he premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known to exist."); *Koch*, 11 S.W.3d at 155; *see also Ladner v. Temple-Inland Prods. Corp.*, No. 09-97-00231-CV, 1999 Tex. App. LEXIS 2795, at *4 (Tex. App.–Beaumont Apr. 15, 1999, no pet.) (per curiam) (concluding that summary judgment was proper in a case where appellant, an independent contractor, alleged that the general contractor and premises owner failed to provide adequate lighting and sufficient barricades on a construction project). Vargas's claimed defect—inadequate lighting—was obviously pre-existing and not a concealed condition.

In support of his claims, Vargas attached the following, among other things, to his response to CBS's no-evidence motion for summary judgment: (1) two work orders pertaining to the job; (2) several photographs of the pump truck from which he fell; (3) an affidavit executed by Jason T. English, a licensed professional engineer and board certified safety professional; and (4) deposition testimony of Joe Sakulenzki, the owner of CBS, Ramiro Elizondo, CBS's superintendent supervising the job, English, and Vargas himself.

The first work order drafted by CBS was directed to TSI and indicated that the project was to take place on February 2, 2006 at 5:00 a.m., while the second work order, created by L&G Equipment,[5] reflected that the project entailed a concrete pour of 252 yards and that the job began at 4:30 a.m. and concluded at 8:00 a.m. These work orders

---

[5] L&G Equipment was another subcontractor on the project and is not a party to this appeal.

6

establish that the project commenced in the pre-dawn hours of February 2, 2006; thus, lighting was needed to conduct the concrete pour. In his affidavit, English stated that "the lighting provided at the work[]site in issue was inadequate, both in illumination output and direction."

However, Vargas has not directed us to any evidence in the summary judgment record establishing that the lighting of the work site constituted a concealed defect. CBS only had a duty to warn Vargas of concealed defects that he might encounter in doing his own work. *See Moritz*, 257 S.W.3d at 216. Common sense would dictate that the lighting of a construction work site is an open and obvious condition. Therefore, Vargas has failed to raise a fact issue regarding a concealed defect. *See id.*; *see also Lawrence*, 988 S.W.2d at 225. We therefore conclude that the trial court did not err in granting CBS's no-evidence motion for summary judgment with respect to Vargas's premises condition claim.

## 2. Vargas's Negligent Activity Claim

Vargas also alleged a negligent activity claim, contending that CBS exercised sufficient control of the "means, methods, and manner" of his job so as to require CBS to provide adequate lighting while he was doing his job. Generally, a general contractor does not have a duty to ensure that the independent contractor performs its work in a safe manner, unless the general contractor retains some control over the manner in which the work is done. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998) (per curiam).[6] A duty may arise if the general contractor has the right to control the means,

---

[6] In *Hoechst-Celanese Corp. v. Mendez*, the supreme court noted the following with respect to control:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be*

7

methods, or details of the independent contractor's work. *See Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004); *Elliott-Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803-04 (Tex. 1999). A general contractor's right to control may be established through evidence of a contractual agreement that explicitly assigns the right to control the subcontractor's employee's work. *Dow Chem. Co.*, 89 S.W.3d at 606; *see Koch*, 11 S.W.3d at 155; *Elliott-Williams*, 9 S.W.3d at 804. The right to control may also be established if the evidence demonstrates that the general contractor actually exercised control over the manner in which the independent contractor's work was performed. *See Koch*, 11 S.W.3d at 155. A legal duty does not arise if there is no control over the work of the independent contractor. *Elliott-Williams*, 9 S.W.3d at 803-04.

Additionally, a general contractor is not subject to liability if it only retains the general right to recommend a safe manner for the independent contractor's employees to perform their work. *Koch*, 11 S.W.3d at 155 ("[T]he comments to section 414 of the Restatement [Second] suggest that merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a [general contractor] to liability . . . ." (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1965))). "[R]equiring an independent contractor to 'observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions [does] not impose an unqualified duty of care on [a premises owner] to ensure that [an independent contractor's employees do] nothing unsafe." *Koch*, 11 S.W.3d at 156

---

*followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

967 S.W.2d 354, 356 (Tex. 1998) (per curiam) (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)) (emphasis added); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.

(quoting *Hoechst-Celanese Corp.*, 967 S.W.2d at 357-58). Safety requirements do give rise to a narrow duty to ensure that the safety requirements and procedures do not unreasonably increase the probability and severity of injury. *Hoechst-Celanese Corp.*, 967 S.W.2d at 358.

CBS argued in its no-evidence motion for summary judgment that Vargas failed to provide evidence that CBS controlled the manner, methods, and means of Vargas's work done on the morning of the incident. We agree.

In its no-evidence summary judgment motion, CBS stated that:

Plaintiff [in his deposition] testified that his employer TSI directed his work in the following particulars:

1. Telling [sic] Plaintiff where to go and what to do on a specific day;

2. Provided all the equipment necessary for Plaintiff to do his work;

3. Provid[ed] the facilities necessary for Plaintiff to do the job[; and]

4. Provided Plaintiff the training and the details of how to do the work.

Plaintiff further testified that CBS employees only told him how many concrete samples to take. Plaintiff testified that CBS employees never told him . . . where to take the samples from and provided him [with] no instructions on how to actually take the samples.

In his response to CBS's no-evidence motion for summary judgment, Vargas asserted that it was not necessary for CBS to control all aspects of his work. Instead, Vargas contended that CBS controlled some aspects of his work, including the safety of the work site which, therefore, imposed a duty on CBS to provide him with a safe workplace while he was conducting the concrete testing.

In the summary judgment record before us, there is no evidence that Vargas's duties were governed by a contract. Vargas again cites to the two previously mentioned

9

work orders to suggest that CBS exercised control over his work; however, neither work order stated that CBS exercised control over Vargas other than merely setting the schedule for the job. *See Hoechst-Celanese Corp.*, 967 S.W.2d at 356.

Vargas also directs us to deposition testimony by Sakulenzki and English. In particular, Vargas references the following statements made by Sakulenzki:

| | |
|---|---|
| Q: [Vargas's counsel] | And part of that is you entrust your superintendents to make sure that the work is being done in a safe manner, right? |
| A: [Sakulenzki] | Yes. |
| Q: | And Ramiro, you trust him to make the determination on whether something is dangerous. |
| A: | Yes. |
| . . . . | |
| Q: | He needs to monitor it [the job] and make sure he does it—that they do it right, contractors do it right. |
| A: | Yes. |
| Q: | Can you depend on Ramiro to control the—the detail of the work these contractors perform at a work site? |
| A: | Yes. |
| Q: | And you depend on Ramiro to instruct the contractors on how they do certain things, right? |
| A: | Some things, yes. |
| Q: | Would you expect Ramiro to stop a concrete pour if it was occurring in the dark with no lights? |

A:          Yes.

Q:          Do you think that he should have stopped it if that was the case?

A:          Yes.

. . . .

Q:          You think, looking back, that there should have been some lighting provided at this work site?

. . . .

A:          If it was poured at five o'clock in the morning, I would think there'd need to be some lighting.

English generally alleged in his deposition testimony that CBS, as the general contractor, had overall control over the job, including "all safety on the site and—including adequate lighting." English also described the lighting that should have been provided at the work site.

Viewing the summary judgment record in the light most favorable to Vargas, we find that Vargas has failed to raise a material fact issue as to whether CBS controlled the means, methods, and manner of Vargas's job. *See Mack Trucks, Inc.*, 206 S.W.3d at 582. The questioning of both Sakulenzki and Elizondo did not yield an admission that CBS controlled the means, methods, and manner of Vargas's work.

Moreover, in his deposition testimony, English speculates that CBS exercised sufficient control over Vargas's work so as to create a legal duty.[7]  In fact, English's statements about whether CBS exercised control over Vargas's work were conclusory and,

[7] *But see Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215-16 (Tex. 2008) ("An *independent contractor* owes its employees a nondelegable duty to provide them with a safe place to work, safe equipment to work with, and warn them of potential hazards.  It also controls the details and methods of its own work, including the labor and equipment employed.") (emphasis added).

11

therefore, constituted improper summary judgment evidence. *See Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (holding that conclusory statements made by an expert witness is insufficient summary judgment evidence); *see also Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984). Because the summary judgment record does not contain more than a scintilla of evidence that CBS actually controlled the means, methods, and manner of Vargas's work, a fact issue was not raised on CBS's duty to ensure that Vargas performed the work in a safe manner. *See* Tex. R. Civ. P. 166a(i); *Moritz*, 257 S.W.3d at 214-15; *Koch*, 11 S.W.3d at 155; *Elliott-Williams*, 9 S.W.3d at 803-04. Accordingly, we conclude that the trial court did not err in granting CBS's no-evidence motion for summary judgment on Vargas's negligent activity claim. Vargas's first issue is overruled.

## IV. Conclusion

Because we have concluded that the trial court did not err in granting summary judgment in favor of CBS, we need not address Vargas's second issue. *See* Tex. R. App. P. 47.1. Accordingly, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 9th day of July, 2009.

12