

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00287-CV

TRACY J. MASON, APPELLANT

V.

SOUTHWEST G.C., INC. A/K/A SOUTHWEST
GENERAL CONTRACTORS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 112087-E-CV, Honorable Timothy G. Pirtle, Presiding

May 28, 2026

OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Tracy J. Mason, appeals the trial court's grant of summary judgment in favor of Appellee, Southwest G.C., Inc., a/k/a Southwest General Contractors. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Southwest was the general contractor on a commercial building project in Plainview. Southwest subcontracted the stonework on the project to an independent

contractor, Ochoa Masonry, LLC. Mason was a member of the work crew under Ochoa's supervision. As Mason was walking across a 20-foot-tall scaffold, the walk boards slipped through the sidearms causing him to fall. He sustained serious injuries. Under the subcontract, Ochoa was responsible for providing the scaffolding equipment and ensuring its safe use by its employees. Ochoa's crew erected the scaffold about ten days before Mason fell. At the time he fell, Mason was not utilizing any fall-protection equipment.

Mason sued Southwest and Ochoa for negligence and damages arising out of the accident. Ochoa was served but never filed an answer. Subsequently, Southwest filed its traditional and no-evidence motion for summary judgment contending, inter alia, that there was no evidence of duty, breach, or proximate cause to support Mason's negligence claim. Mason filed a continuance and cited the need for taking "at least one" deposition to properly respond to the traditional motion for summary judgment. The trial court granted Mason's motion for continuance and reset the hearing for thirty days. Mason filed his opposition to the motion for summary judgment. Following the summary judgment hearing, the trial court entered an order granting Southwest's summary judgment motion without specifying the grounds on which it granted the motion. Mason nonsuited claims against Ochoa, and the trial court severed a crossclaim asserted by Southwest against Ochoa, making the summary judgment a final judgment. Mason timely filed this appeal.

By his appeal, Mason presents two issues. Mason contends, by his first issue, that the trial court erred in setting and hearing the no-evidence motion for summary judgment before the end of the discovery period. Mason's second issue contends that the trial court erred in rendering the summary judgment.

2

**ISSUE ONE: ADEQUACY OF TIME FOR DISCOVERY**

By his first issue, Mason contends that the trial court erred in setting and hearing the no-evidence motion for summary judgment almost two-and-one-half months before the end of the discovery period.

Texas Rule of Civil Procedure 166a(i) requires that an "adequate time for discovery" pass before a no-evidence summary judgment may be granted. TEX. R. CIV. P. 166a(i). A discovery period set by a pretrial order is presumed to be an adequate time for discovery unless there is a showing to the contrary, and a motion for no-evidence summary judgment will ordinarily only be permitted after the discovery period ends. TEX. R. CIV. P. 166a cmt. In determining whether an adequate time for discovery has passed before considering a no-evidence summary judgment motion, a trial court should consider (1) the nature of the case, (2) the nature of the evidence necessary to controvert the motion, (3) the length of time the case has been active, (4) the amount of time the no-evidence motion has been on file, (5) whether the movant has requested stricter guidelines for discovery, (6) the amount of discovery that has already taken place, and (7) whether the discovery deadline is specific or vague. *McInnis v. Mallia*, 261 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

But "[w]hen a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). A reviewing court will not consider any reason for continuance that was not expressly presented to the trial court. *See D.R.*

3

*Horton − Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 223 n.5 (Tex. App.—Fort Worth 2013, no pet.) (citing T EX. R. C IV. P. 251 and 252; T EX. R. A PP. P. 33.1(a)). When the basis for continuance is the need for additional discovery, the movant must show how the evidence sought by discovery is material to its claims. *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

In the present case, the trial court granted Mason's motion for continuance and reset the summary judgment hearing to May 21, 2025, approximately two months before the discovery deadline of August 1. In his summary judgment response, Mason requested the trial court deny the motion for summary judgment because there had not been adequate time for discovery. However, Mason did not seek a second continuance or file an affidavit explaining the need for further discovery before the summary judgment hearing. *Tenneco Inc.*, 925 S.W.2d at 647. Moreover, he did not identify the evidence sought or explain how the evidence is material to his claims. *Perrotta*, 47 S.W.3d at 576. Consequently, Mason has waived any argument that the summary judgment was premature. *Tenneco Inc.*, 925 S.W.2d at 647; *McClure v. Attebury*, 20 S.W.3d 722, 729–30 (Tex. App.—Amarillo 1999, no pet.). We overrule issue one.

## ISSUE TWO: SUMMARY JUDGMENT

By his second issue, Mason contends that the trial court erred in granting the motion for summary judgment.

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review, we take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and

4

resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant fails to meet its burden under the no-evidence standard, there is no need to consider the traditional motion. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements. *Ridgway*, 135 S.W.3d at 600. A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" as to the existence of the fact. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014) (quoting *Ridgway*, 135 S.W.3d at 601). Under the traditional summary judgment standard, the movant meets its burden if it proves that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c).

To prevail on a negligence claim, a plaintiff must establish a duty owed to the plaintiff by the defendant, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). Whether a duty exists is a threshold inquiry and a question of law for the court. *Id*. A general contractor ordinarily owes no general duty to an independent contractor's employee to ensure that the employee safely performs his work. *Dow Chem. Co. v. Bright*, 89 S.W.3d

5

602, 606 (Tex. 2002); *Koch Refin. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam). However, a duty of care may arise if the general contractor retains some control over the manner in which the independent contractor performs its work that causes the damage. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020); *Bright*, 89 S.W.3d at 606. Control can be established in two ways: by evidence establishing that the general contractor had a contractual right to control the manner in which the subcontractor performed its work or by evidence of actual control. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021); *Bright*, 89 S.W.3d at 606. In either case, the "control must relate to the condition or activity that caused the injury." *Clayton W. Williams, Jr., Ins. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Further, the control retained or exercised by the general contractor must "extend[] to 'the means, methods, or details of the independent contractor's work.'" *Arredondo*, 612 S.W.3d at 295; *see Chapa*, 11 S.W.3d at 156 (general contractor "must have some latitude to tell its independent contractors what to do, in general terms, . . . without becoming subject to liability").

In its motion for summary judgment, Southwest argued it did not owe a duty to Mason because he was an employee of an independent contractor, and it did not exercise control over Mason or have a contractual right to control Mason's work. In support of its motion, Southwest provided the subcontractor agreement and excerpts of Mason's deposition. Southwest points to Mason's testimony that he had been working at the construction site for three to four months laying stone and that Ochoa's employees were responsible for setting up the scaffolding. Southwest's superintendent told the stone layers where to start work and discussed the consistency of the mortar but did not otherwise control their work.

6

In the subcontract, Ochoa was an independent contractor and required to furnish all labor, supervision, and safety protection necessary to accomplish its work. Additionally, the contract requires Ochoa to do the following:

(i) take all reasonable safety precautions with respect to the Work;

(j) comply with (i) all safety measures initiated by [Southwest] and (ii) all applicable laws, ordinances, rules, regulations, and orders of any public authority for the safety of persons or property;

(k) furnish safety tools and equipment to all employees of [Ochoa] and make certain that the employees properly use the safety tools and equipment;

(l) comply with the Occupational Safety and Health Act; [and]

(m) remain fully responsible for the health and safety of [Ochoa], all [Ochoa's] employees, and all [Ochoa's] sub-contractors . . . .

Mason filed a response to Southwest's motion for summary judgment in which he argued Southwest had a duty as the "controlling employer" under the Occupational Safety and Health Administration's (OSHA) multi-employer worksite laws to provide a safe work environment. He further argued that the contract required Ochoa to comply with safety and health requirements, Southwest had the right to take various actions against Ochoa if it failed to comply, and Southwest retained the right to control the safety of the scaffolding from which Mason fell. We address each argument in turn.

OSHA Regulations

We first address Mason's contention that OSHA regulations impose a duty on Southwest to provide for safety at the worksite including an overall supervisory responsibility for fall protection and scaffold safety requirements, and the power to correct safety and health violations or require others to correct them. Specifically, Mason argues

7

that Southwest, as a controlling employer, owed a duty to Mason to ensure that OSHA scaffolding fall-protection regulations were followed by Ochoa employees. Mason relies on *Acosta v. Hensel Phelps Constr. Co.*, 909 F. 3d 723, 743 (5th Cir. 2018) (holding Secretary of Labor has authority under OSHA to issue citations to controlling employers at multi-employer worksites for violations of the Act's standards). We disagree with Mason's contention. Texas courts have consistently held that OSHA regulations do not expand common law duties imposed by state law and do not create an implied cause of action. *See Haggard v. Blattner Energy, Inc.*, No. 02-25-00056-CV, 2026 Tex. App. LEXIS 1906, at *35 (Tex. App.—Fort Worth Feb. 26, 2026, no pet.) (mem. op.); *McClure v. Denham*, 162 S.W.3d 346, 353 (Tex. App.—Fort Worth 2005, no pet.); *Richard v. Cornerstone Constrs., Inc.*, 921 S.W.2d 465, 468 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (op. on reh'g); *see also* 29 U.S.C.A. § 653(b)(4) (establishing that nothing in the OSHA statute "shall be construed to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law . . .").

Contract Provisions

We next address Mason's argument that the contract requires Ochoa to comply with safety and health requirements and gives Southwest the right to take various actions against Ochoa for failing to meet contract requirements, including the right to have non-compliance corrected by using other workers and charging Ochoa for that work. Mason points to the contract terms that require Ochoa to "take all reasonable safety precautions," "comply with . . . all applicable laws," and "comply with the Occupational Safety and Health Act." If Ochoa failed to comply, it would be in "default," and the remedy would be that

Southwest could "take over or cause others to take over the Work," "hire other subcontractors to complete the Work," and "recover from [Ochoa] all costs, expenses, losses, damages, reasonable attorney's fees, and all costs of collection incurred by [Southwest]." According to Mason, these contract terms demonstrate that Southwest had contractual control over Ochoa for the safety of the work being done on the scaffolding.

"A contract may impose control upon a party thereby creating a duty of care." *Bright,* 89 S.W.3d at 606. To be liable for an independent contractor's acts, a general contractor "must have the right to control the means, methods, or details of the independent contractor's work[,] . . . the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done." *Id.*

In this case, the contract does not give Southwest the right to control the means and methods of Mason's masonry work or his use of the scaffolding on the construction site. Consequently, the contract does not impose on Southwest any duty of care to Mason. The summary judgment evidence established that it was Ochoa, not Southwest, that had the responsibility to ensure that Mason's work was performed safely. The contract delegated OSHA compliance to Ochoa, provided that Ochoa "furnish safety tools and equipment" to all of its employees, and "make certain that the employees properly use the safety tools and equipment." Other provisions required that job safety is the responsibility of Ochoa, including furnishing "Personal Protective Equipment" (PPE) [to] be worn at all times while employees are on the job-site." The contract places all responsibility for Mason's work on Ochoa. These provisions do not confer a right to control on Southwest. *See Hernandez*, 622 S.W.3d at 869 (contract requiring

9

subcontractor furnish all supervision of its employees and designating subcontractor solely responsible for acts and omissions of its employees did not confer right to control); *Chapa*, 11 S.W.3d at 156 (no contractual right to control existed where contract provided that subcontractor "would furnish any and all supervision over its employees and . . . 'shall perform as an independent contractor'").

In his second amended petition, Mason alleges that a scaffold that "was not properly constructed, secured, and planked" caused his fall. However, there is no contractual provision giving Southwest control over the scaffolding that Mason alleges was the cause of his fall. The testimony is undisputed that Ochoa's crew was responsible for, and did, in fact, set up the scaffolding. Consequently, Mason has not shown that Southwest had contractual control over the activity that caused his injury. *Olivo*, 952 S.W.2d at 528.

Further, the contract does not provide Southwest with the right to control the means, methods, or details of Ochoa's work, nor does it grant Southwest the authority to direct the order in which Ochoa's work should be accomplished. "[M]erely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work" is insufficient to impose a duty. *Chapa*, 11 S.W.3d at 155.

Mason's argument that Southwest's right to have Ochoa's non-compliance corrected is equally unavailing. An unexercised contractual right does not give rise to a legal duty. While Southwest retained the right to stop performance of work it considered unsafe, this does not mean it retained the right to control the means, methods, or details

10

of Mason's or Ochoa's work. In *Koch Refining Co*., the Texas Supreme Court held that a duty of care does not arise from

> a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to the methods of his work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

11 S.W.3d at 155.

Having reviewed the evidence in the light most favorable to Mason, we conclude, as a matter of law, that Southwest did not retain the degree of contractual control necessary to create a duty.

Actual Control

In its summary judgment motion, Southwest cited Mason's testimony that the scaffolding was provided by Ochoa and Ochoa's crew set up the scaffolding, including the walk boards. Mason also testified that Southwest did not instruct him how to perform his work, and he was not aware of any of Southwest's employees giving instructions regarding the scaffolding.

Mason responded with evidence that Southwest's superintendent was on site every day, coordinated the subcontractor's work schedules, decided what time of day to start and stop work, and held weekly safety meetings. Mason further argued that it would have been obvious to the superintendent whether there were guardrails, whether the walk boards were weathered and secure, and whether fall protection equipment was being used. Specifically, Mason argues that Southwest's awareness of Ochoa's failure to use

11

fall protection created a duty to Mason. According to Mason, Southwest was aware that Ochoa routinely ignored applicable federal regulations and standard company policies related to safety and therefore had a duty to Mason to require corrective measures to be taken or to cancel the contract. *See Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998) (per curiam) (identifying "narrow duty of care" when general contractor was aware of routine or specific safety violations). Mason points to evidence that he had been trained to "tie off" when working at heights, but there was nothing to "tie off" to on the day of the accident. Ochoa had "tie off" equipment, but it was not used on this job site. Southwest's superintendent admitted that Southwest was responsible to ensure that its subcontractors follow safe practices "to a certain extent," and that Southwest expects its subcontractors to follow OSHA safety regulations, which he considered proper guidelines for safety on the job.

Southwest is not subject to liability merely because its superintendent was present at the job site, exercised general supervisory authority over the scheduling and results of the subcontractor's work, or made an effort to ensure that the subcontractors performed their work safely. *Chapa*, 11 S.W.3d at 156. There was no evidence that Southwest instructed Ochoa's employees on how to lay the stone or controlled the use of fall-protection systems, including the use of guard rails or walk boards. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) (holding general contractor retained control when it directed employee to ensure subcontractor properly utilized fall-protection equipment and expressly approved of fall-protection systems used by subcontractor). Mason testified that he could not tell that there was a problem with the scaffold's walk board before he fell, and he presented no evidence that Southwest had

12

actual control of the defective scaffold that resulted in his injury. *See Chapa*, 11 S.W.3d at 156 (independent contractor's employee did not present any evidence that general contractor instructed employee in how to lift pipe leading to employee's injury). There must be a nexus between a general contractor's retained supervisory control and the activity that caused the injury. *See Lee Lewis Constr.*, 70 S.W.3d at 784; *see also Mendez*, 967 S.W.2d at 357 (general contractor's insistence that independent contractor's employees observe compliance with federal laws, general safety guidelines, and other standard safety precautions did not impose unqualified duty of care on general contractor to ensure independent contractor's employees did nothing unsafe; rather, duty owed is that any safety requirements it promulgated did not unreasonably increase the probability and severity of injury).

As to Mason's argument that Southwest held mandatory weekly safety meetings, Mason offers no evidence of what was presented during those safety meetings that would give rise to a duty.

Mason also argues that Southwest had a duty arising out of its awareness that Ochoa failed to use fall protection. Mason relies on the following language of *Mendez*: "[A]n employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract." *Mendez*, 967 S.W.2d at 357. Thus, according to Mason, Southwest's knowledge that Ochoa routinely ignored OSHA requirements for fall protection imposed a duty on Southwest to require corrective measures to be taken or cancel the contract. However, there is no proof that this narrow duty of care was breached. Southwest's superintendent testified that Ochoa's crew had

13

been using scaffolding at the job site for only a week and a half. There was no reason for anyone on behalf of Southwest to inspect the scaffolding because Ochoa's crew was responsible for erecting it. Mason testified that he was not aware of any problems with the walk boards before he fell. While the superintendent was on site when Mason fell, he did not witness him falling. When the superintendent was asked if Mason was wearing any kind of fall-protection equipment at the time of the accident, the superintendent testified, "hardhats are mandatory on the site, work boots, jeans. So [Mason] was compliant every day with those things." There was no evidence demonstrating how many times safety guidelines were ignored, when the violation occurred in reference to the date of the accident, to whom the violation was reported, and what resulted from the observed violations. This evidence is insufficient to raise a fact issue as to actual control. *See Hernandez*, 622 S.W.3d at 868 ("[A]bsent a specific contractual requirement to do so, a general contractor has no affirmative duty to take action upon learning of an independent contractor's employee's unsafe conduct."); *see also Chapa*, 11 S.W.3d at 157.

We conclude that Mason failed to produce summary judgment evidence sufficient to raise a genuine issue of material fact that Southwest owed him a duty as Ochoa's employee through actual control.

Because Mason failed to meet his burden under the no-evidence standard, we need not consider Southwest's traditional motion. *Merriman*, 407 S.W.3d at 248. We hold there is no evidence that Southwest owed Mason any duty and the trial court did not err in granting the motion for summary judgment on Mason's negligence claim. We overrule Mason's second issue.

14

## CONCLUSION

Having considered both issues raised by Mason, we affirm the trial court's judgment.


Judy C. Parker
Chief Justice